SPROUT & DAVIS, INC. *v.* TOREN ET AL.

[No. 17,724. Filed April 5, 1948. Rehearing denied May 14, 1948. Transfer denied June 17, 1948.]

*Draper & Eickhorn,* both of Gary, attorneys for appellant.

' *Dorsey, Travis, & Tinkham,* all of Hammond, attorneys for appellees.

CRUMPACKER, J.—The appellees, as the widow and minor children of one Anthony Toren, were awarded compensation by the Industrial Board of Indiana at the rate of $20.075 per week for a period of 500 weeks for the accidental death of said decedent arising out of and in the course of his employment by the appellant.

In asking us to reverse this award the appellant contends (1) the evidence is wholly undisputed and compels the conclusion that the appellees' decedent was not an employee of the appellant at the time of the accident resulting in his death; (2) assuming, but not admitting, that said decedent was an employee of the appellant at such time there is no evidence to sustain the board's finding that his average weekly wage in such employment was in excess of $36.50 and conse-

quently an award of $20.075 per week is contrary to law; and (3) at the time of decedent's death the law limited weekly compensation to a period of 350 weeks and therefore an award for a period of 500 weeks is unlawful.

The facts giving rise to this controversy are essentially undisputed and may be summarized as follows: The appellant, Sprout & Davis, Inc., is a corporation engaged in the business of transporting petroleum products from the city of Whiting to various points of distribution throughout the state of Indiana. For this purpose it owns and maintains a fleet of trucks with metal tanks mounted thereon. Through wear and tear, road vibration, accidents, etc., various of these tanks develop leaks from time to time which require the services of an electric welder to effect an efficient repair. Anthony Toren, the appellees' decedent, was an electric welder by trade and for about 2 years prior to his death had been employed by the Kellogg Construction Company on an average of 8 hours per day for 5 days per week at $1.75 per hour. Sometime about January 28, 1946, the appellant and said Anthony Toren entered into an arrangement whereby Toren agreed to repair such of appellant's tanks as, from time to time, needed electric welding. Being regularly employed by the Kellogg Construction Company he undertook to do this work during his off hours which were usually in the evening, Saturday afternoons and Sundays. Upon discovering a leak in any of its tanks the appellant caused a "mechanic repair order" to be made out specifying the unit to be repaired and a chalk mark was placed on the tank designating the location of the leak. A bulletin board was maintained upon which notice of the units needing repair were posted. When in need of Toren's services the appellant telephoned his home and

informed his wife to that effect and when he returned from his work at Kellogg's she communicated the information to him. Toren, at his first opportunity during his off hours went to the appellant's plant, consulted the bulletin board, ascertained the unit needing repair, located the leak by the chalk mark thereon and began his work. All tools and supplies, except his welder's hood and gloves, were furnished by the appellant. He reported to no one when he came or went and his work was not supervised by the appellant. He was given no orders or direction as to how or when he should do his work except, when there was more than one tank requiring attention, he was directed through the bulletin board as to which he should repair first. The method, manner and means of doing the work were wholly within his own control. He selected the tools and materials used and occasionally advised the appellant concerning purchase of same. He worked at irregular intervals because the appellant had no way of knowing when and to what extent his services would be needed. For this work he was paid from the time he left home until he returned thereto. He kept his own time and at intervals billed the appellant for his services. In paying him the appellant made no deductions from his pay checks for social security or income taxes. Both parties were free to terminate the arrangement at any time either saw fit without liability for breach of contract. On the 18th day of August, 1946, Anthony Toren was found dead in one of the appellant's tanks which he had been engaged in repairing with an electric welder. An autopsy indicated death by electrocution.

The appellant contends that these facts compel the conclusion that Toren was an independent contractor

and that the relation of employer and employee did not exist between them when he met his death. If that be true the award herein must be reversed as it is definitely settled that the word "employee," as used in the Workmen's Compensation Act, does not include an independent contractor. *Meek* v. *Julian* (1941), 219 Ind. 83, 36 N. E. 2d 854; *Columbia School Supply Co.* v. *Lewis* (1916), 63 Ind. App. 386, 115 N. E. 103.

It is our opinion that the Meek case above cited is decisive of the present controversy. The law involved is clearly and succinctly stated in the following words:

"A claimant for compensation makes out a *prima facie* case, in so far as his relationship with his employer is concerned, when he establishes that he was in the service of the latter under a contract of hire, express or implied; and if the employer wishes to defend on the ground that the employment was casual or not in the usual course of the employer's business, the burden is upon him to show such exception. *Domer* v. *Castator* (1925), 82 Ind. App. 574, 146 N. E. 881. The same rule is applied when the employer asserts that the claimant was an independent contractor. *Dobson's case* (1925), 124 Me. 305, 128 A. 401, 42 A. L. R. 603.; *Washington Recorder Pub. Co.* v. *Ernst* (1939), 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667; 27 Am. Jur., Independent Contractors, § 59. A measure of liberality is indulged in construing the legislative definition of 'employee,' to the end that in doubtful cases an injured workman or his dependents may not be deprived of the benefits of the humane provisions of the compensation plan; and doubt as to whether the claimant was an employee or an independent contractor is resolved in favor of the former status. *J. P. O. Sandwich Shop, Inc.,* v. *Papadopoulos* (1938), 105 Ind. App. 165, 13 N. E. (2d) 869; *Domer* v. *Castator, supra.*"

Applying this rule to the facts in the case before us it is apparent that the appellees made a *prima facie* case establishing the relation of employer and employee. The burden was on the appellant to prove that such relation was that of an independent contractor and we cannot say that the facts sustained that burden as a matter of law. The most favorable aspect of the case, from the appellant's viewpoint, presents nothing more than a relation between it and the decedent, the legal nature of which is doubtful, and the Industrial Board properly resolved the doubt in favor of the decedent's status as an employee.

This brings us to a consideration of the appellant's second proposition. The Industrial Board found that the appellees' decedent, at the time of his death, "was in the employ of the defendant at an average weekly wage in excess of $36.50." § 40-1701 (c), Burns' 1940 Replacement provides:

> " 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of injury, divided by fifty-two (52) ; . . . Where the employment prior to the injury extended over a period of less than fifty-two (52) weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained."

The appellees' decedent worked for the appellant for a period of 26 weeks and earned a total of $671 in wages which, according to the above formula, fixes his average weekly wage at $25.80. We cannot say, as a matter of law, that the result of a computation on that basis is unfair to both parties nor can we say

that 26 weeks is too short a time to make a practicable computation of the decedent's average weekly wages impossible. We conclude therefore that the board's finding that the decedent's average weekly wages in the *employ of the appellant* were in excess of $36.50 is not sustained by the evidence.

This court has held however that where an employee is working at the same time in the same grade or kind of work for different employers under separate and distinct concurrent contracts of hire his total earnings from all of such employers is to be considered in determining his average weekly wages. *In re Howard* (1919), 71 Ind. App. 557, 125 N. E. 215; *Shelby Manufacturing Co., Inc.* v. *Harris* (1942), 112 Ind. App. 627, 44 N. E. 2d 315. It was upon this rule that the board, no doubt, relied in making its award but the difficulty is that it failed to find that the decedent was concurrently employed elsewhere but on the contrary found, in effect, that his average weekly wages, in the employ of the appellant alone, were in excess of $36.50.

The appellant contends that the failure of the board to find concurrent employment is a finding against the appellees on that issue and as such a finding is necessary to sustain the award the same must be reversed. Such is not the effect, in Workmen's Compensation cases, of a failure of the board to find an essential fact upon which there is evidence. In *Cole* v. *Sheehan Construction Company* (1944), 222 Ind. 274, 53 N. E. 2d 172, the Supreme Court said that when the Industrial Board makes no finding upon an issue essential to its award the proceedings should be remanded with directions to find the facts upon such issue and to enter an award based thereon.

Appellant's third proposition is confessed by the appellees. Their decedent died August 18, 1946, and on that date compensation was limited to 350 weeks and not 500 weeks as provided in the award.

§ 40-1402, Burns' 1940 Replacement (Cumulative Pocket Supplement).

These proceedings are ordered remanded to the Industrial Board with instructions to find the facts in reference to the decedent's concurrent employment and enter an award in accordance with the law as expressed herein.

Draper, C. J., not participating.

NOTE.—Reported in 78 N. E. 2d 437.